UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUACH DIVISION

| | | |
|---|---|---|
| **TRINA WILLIAMS JONES,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| vs. | ) | Civil Action # 5:09-cv-198-TBR |
| | ) | |
| **CHRISTIAN COUNTY KENTUCKY, et al,** | ) | |
| | ) | **Electronically Filed** |
| **Defendants** | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Come the Defendants, by and through counsel, and submit the following Memorandum of Law in Support of their Motion for Summary Judgment.

### I. FACTS

On November 21, 2008, Trina Jones went to work as usual at the cafeteria at Christian County High School at approximately 7:45 a.m. Exhibit A. On her way to work, Ms. Jones dropped her son, Austin, off at North Drive Middle School to catch the bus to alternative school. Exhibit A. After concluding her work day, Ms. Jones went to Houchen's, a local grocery, to pick up Austin, who had spent the day at alternative school. Pl's Dep. 27:7. On their way home, Ms. Jones realized that Austin had been consuming alcohol. Exhibit B. As Ms. Jones and her son continued their drive home, Austin was "getting more and more inebriated". Exhibit B. By the time they arrived home, Austin was "getting pretty…drunk". Exhibit C.

Ms. Jones and Austin arrived at their home at approximately 4:30 p.m. Exhibit C. No one else was at the Jones home when they arrived. Exhibit D. Once Ms. Jones and

1

Austin were home, Austin ate and then, per Ms. Jones' orders, Austin went upstairs to go to bed at approximately 5:30 pm.  Exhibit C; Exhibit D; Exhibit E.  A couple of minutes later, Austin came back downstairs and wanted to call a friend, which Ms. Jones allowed.  Exhibit E.  Since their arrival at home, Austin had been persistently asking questions and constantly telling his mother he was sorry.  Exhibit F; Exhibit G.  Finally, Ms. Jones stated, "Son, if you don't go upstairs I'm going to have to call somebody."  Austin responded, "I'll do it."  Exhibit G.  Austin then called 911 and stated, "Hey [expletive], I'm drunk come pick me up."  "I'm at 4170 Greenville Road."  Exhibit H.  Austin then hung up.  Exhibit H.  Emergency dispatch immediately phoned the Jones residence after the hang-up call and Ms. Jones answered.  Exhibit I.  Ms. Jones told the 911 dispatch, "he ain't causing a problem it's my idiot brother."  Exhibit H.  Ms. Jones then confirmed that she was Trina Jones, but refused to tell dispatch the name of her "brother" causing the disturbance because, as she stated, she would not be pressing charges.  Exhibit H.  The 911 dispatch operator then informed Ms. Jones that police officers were on their way to her home.  Exhibit H.  When a caller to 911 terminates the call or is disconnected, it is standard operating procedures for the dispatcher to attempt to get the caller back on the line and dispatch officers to the location from which the call was made.  Exhibit J.

At approximately 7:00 p.m. officers arrived at the Jones residence.  Exhibit K.  Deputy Robert Schneider was the first to arrive at the residence and shortly thereafter Captain Timothy Cooksey and Sergeant Phillip Wallace arrived in separate vehicles to "back up" Deputy Schneider.  Exhibit K; Exhibit L.  Deputy Tracey Cooksey was riding along with her husband, Captain Cooksey, on that night.  Exhibit Q.  Deputy Cooksey did not get out of the vehicle.  Exhibit Q.  Ms. Jones first realized officers were at her

residence when she saw their lights through her window. Exhibit M. After their arrival, Austin, wearing only his underwear, ran out the door; Ms. Jones followed him. Exhibit N; Exhibit O. Deputy Schneider was the first officer Austin encountered upon running outside. Exhibit K. Austin seemed angry and was screaming; he shouted that he wanted the officer to get off his property and was running toward the officer. Exhibit K. Deputy Schneider and Austin exchanged words. Exhibit P; Exhibit O. Austin was screaming, shouting, and cursing. Exhibit K. Deputy Schneider told Austin to stop or he would be tased. Exhibit K. Deputy Schneider told Austin to get on the ground. Exhibit O. Deputy Schneider started taking steps back and telling Austin to stop but Austin continued running toward Deputy Schneider. Exhibit K. As acknowledged by Ms. Jones, Deputy Schneider told Austin to "get back". Commonwealth v. Trina Jones, 08-M-02078 (Christian Dist. Ct. 4/19/11, 11:25:00). Feeling as though Austin was an immediate threat, Deputy Schneider then deployed his taser and Austin fell to the ground. Exhibit K; Exhibit R. Ms. Jones then yelled, "He is only fifteen; please don't hurt him." Exhibit S. Ms. Jones, by her own admission, "was yelling quite loudly". Commonwealth v. Trina Jones, 08-M-02078 (Christian Dist. Ct. 5/29/09, 11:43:55).

After Austin was tased and fell to the ground, Deputy Schneider instructed him to roll over and put his hands behind his back. Exhibit K. Austin did not obey that command, rather, he attempted to get back up onto his feet so Deputy Schneider tased Austin again, causing Austin to fall to the ground. Exhibit K. After being tased for the second time, Austin stayed on the ground and rolled over onto his stomach as instructed and Deputy Schneider straddled Austin in order to handcuff him. Exhibit K.

Ms. Jones began screaming and approaching Deputy Schneider after Austin was tased the first time, despite the fact that Deputy Schneider continuously told her to stay back. Exhibit K. After Deputy Schneider tased Austin the second time and straddled him in order to get him handcuffed, Ms. Jones still remained in close proximity to Deputy Schneider and Austin. Exhibit K. Deputy Schneider had Austin's left hand cuffed but Austin still had one hand free. Exhibit K. Deputy Schneider thought Ms. Jones was an immediate threat. Exhibit K.

When Captain Cooksey and Sergeant Wallace arrived at the scene, they could see Deputy Schneider trying to handcuff the juvenile and heard him instructing Ms. Jones to step back; they also observed Ms. Jones standing over Deputy Schneider screaming. Exhibit Q. Ms. Jones was within arms length of Deputy Schneider, placing Deputy Schneider in fear that Ms. Jones would harm him. Exhibit Q; Exhibit K. Based on his fear and Ms. Jones' interference with her son's arrest, Deputy Schneider, while still kneeling over Austin attempting to place handcuffs on him, reached up with an open palm and pushed Ms. Jones back. Exhibit K. Deputy Schneider was then able to finish handcuffing Austin. Exhibit K.

Deputy Schneider instructed Captain Cooksey and Sergeant Wallace, who had also arrived at the scene, to arrest Ms. Jones because she had got back up and was attempting to go back into the residence. Exhibit Q; Exhibit K. Deputy Schneider placed Austin under arrest and transported him to the jail. Exhibit K. Captain Cooksey placed Ms. Jones under arrest and drove her to the jail. Exhibit Q. At some point thereafter, Deputy Schneider transported Ms. Jones from the jail to the hospital to explore her alleged injury to her arm. Exhibit T. Deputy Schneider charged Ms. Jones with

4

Menacing, Obstructing Governmental Operations, and Resisting Arrest in Christian District Court Case 08-M-02078.

Ms. Jones subsequently filed the Complaint initiating litigation against Christian County, Kentucky and Deputy Robert Schneider, individually and in his capacity as an officer of the Christian County Sheriff's Office. Ms. Jones' Complaint is brought pursuant to 42 USC § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution. Ms. Jones has also brought various state law claims including violations of KRS 508.030, KRS 411.010, and KRS 411.020 and a common law negligence claim. Ms. Jones claims that Deputy Schneider acted negligently, grossly negligent, maliciously, and recklessly and that he used excessive and unnecessary force. Ms. Jones claims that Christian County is liable for the actions of Deputy Schneider alleging that he is an agent, servant, or employee of Christian County.

## II. STANDARD OF REVIEW

Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "This means that after the opportunity for discovery, if the moving party demonstrates that there is no genuine issue of material fact as to the existence of any element essential to the non-moving party's case, then summary judgment is appropriate." Bill Call Ford, Inc. v. Ford Motor Co., 48 F.3d 201, 205 (6th Cir. 1995) (citation omitted). After the moving party satisfies the initial burden, the burden shifts to the non-moving party "to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)). The issue is whether, after a review of the entire record, a rational fact

finder could not find for the non-moving party. Id. (citation omitted). The non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the rule, the non-moving party must come forward with "particular parts of materials in the record" or show "that the materials cited do not establish the absence…of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). Summary judgment against the Plaintiff is appropriate in this case because, as set forth below, there is no genuine issue of material fact and the Defendants are entitled to judgment as a matter of law.

### III.  ARGUMENT

#### A.  THE DEFENDANTS ARE PROTECTED BY THE DOCTRINE OF IMMUNITY

##### 1.  42 U.S.C. 1983

The Defendants in this action are entitled to summary judgment as to the Plaintiff's claim pursuant to 42 U.S.C. 1983 because their actions are protected under the doctrine of qualified immunity. "Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from civil liability unless their conduct violates clearly established constitutional rights." Bishop v. Hackel, 636 F.3d 757, 765 (6th Cir. 2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). In essence, the issue is whether Deputy Schneider exercised discretion and acted in good faith when he pushed Ms. Jones away and subsequently instructed that she be arrested.

Austin called 911 during the evening hours on November 21, 2008 and stated, "Hey [expletive], I'm drunk come pick me up." "I'm at 4170 Greenville Road." Austin then hung up. Prompted by Austin's call, officers arrived at the Jones' residence at approximately 7:00 p.m. When the officers arrived at the residence, Austin, wearing only

6

his underwear, ran outside on that November night toward the officers. Deputy Schneider was the first officer Austin encountered upon running outside and the two exchanged words. Deputy Schneider told Austin to get on the ground but Austin refused to comply. Deputy Schneider was then forced to tase Austin because Austin refused to obey his command. Deputy Schneider then pushed Ms. Jones when she attempted to interfere with his restraint of Austin. Ms. Jones was subsequently arrested for that interference as well as Menacing and Resisting Arrest.

Deputy Schneider was using his discretion when he acted to prohibit Ms. Jones from interfering with his efforts to restrain her son. Deputy Schneider's actions involved his use of discretion, judgment, personal deliberation, and decision. Yanero v. Davis, 65 S.W.3d 510, 522 (Ky. 2010). Contrary to a ministerial act, this was not a situation where Deputy Schneider's duty was absolute or certain. Rather, he used his judgment to make a decision to control what was an escalating situation at the Jones' residence.

Deputy Schneider also acted in good faith. The good faith requirement has both an objective and subjective component. Id. at 523 (citing Harlow v. Fitzgerald, 457 U.S. 800 (1982)). "Referring both to the objective and subjective elements, ... qualified immunity would be defeated if an official "*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury ...." Id. (citing Harlow at 815) (emphasis in original). There is no evidence that Deputy Schneider "*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff][.]" Id. Moreover,

7

"officials who actually knew of a substantial risk … may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Hackel at 765 (citing Farmer v. Brennan, 511 U.S. 825, 844 (1994)). Deputy Schneider acted reasonably when he pushed Ms. Jones away from him because he legitimately thought Ms. Jones was a threat to him while he was down on the ground attempting to restrain Austin. Ms. Jones continued to scream and remain close to Deputy Schneider and Austin even though Deputy Schneider consistently told Ms. Jones to step away from him. This was a situation where an officer had to take action quickly to protect himself because he was dealing with two uncooperative individuals. Deputy Schneider also was reasonable in his arrest of Ms. Jones as her actions formed the probable cause for her to be arrested for, at a minimum, Menacing, Obstructing Governmental Operations, and Resisting Arrest.

The record is also void of any evidence that Deputy Schneider acted "*with the malicious intention* to cause a deprivation of constitutional rights or other injury …." Id. Deputy Schneider acted to control an individual, Ms. Jones, who insisted on interfering with his efforts to restrain an intoxicated and disorderly person. "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." Greathouse v. Couch, 2011 WL 2989069, 3 (6th Cir. 2011) (unpublished) (citation omitted). "[A] police officer *need not wait* for a suspect…to actually hit him, before the officer may fire back." Id. (citation omitted) (emphasis added). Deputy Schneider reasonably understood, based upon his duties as a law enforcement officer, that he had the power and responsibility to use reasonable force to prohibit Ms. Jones from obstructing his efforts to restrain Austin. Deputy Schneider

8

did not need to wait for Ms. Jones to strike him, he was reasonable in pushing her away because he thought she was going to harm him and he considered her an immediate threat.

For the reasons stated above Deputy Schneider's actions were discretionary and in good faith; therefore, the Defendants are immune from liability and entitled to summary judgment.

### 2. State Law Claims

The Defendants respectfully request the Court to dismiss the Plaintiff's pendent state law claims upon dismissal of the Plaintiff's federal claims. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) (holding state law claims should be dismissed before trial if federal claims are dismissed before trial). Nevertheless, the Defendants in this action are also entitled to summary judgment as to the Plaintiff's state law claims because their actions were protected under the doctrine of qualified immunity. According to Yanero v. Davis, government officials are entitled to qualified immunity when performing a discretionary act, in good faith, within the scope of their employment. 65 S.W.3d 510, 522 (Ky. 2010).

The analysis for determining whether the Defendants' actions were discretionary and in good faith under Kentucky law mirrors the analysis under federal law. Therefore, for the reasons stated above, Deputy Schneider's actions were discretionary and in good faith.

The actions taken by Deputy Schneider were also within the scope of his employment. Deputy Schneider was responding to a 911 hang-up call made from the Jones' residence. Deputy Schneider and other officers, acting within the scope of their

employment, went to the Jones' residence in response to Austin's call to 911. Because officers routinely respond to calls to 911 within the scope of their employment, Deputy Schneider was clearly acting within the scope of his employment when he arrived at the Jones' residence. Therefore, the Defendants are entitled to qualified immunity and, thus, summary judgment on the Plaintiff's state law claims.

### 3. Claims Against Christian County and Deputy Schneider in His Official Capacity

Claims brought against an official in his or her official capacity are treated as a claim against the underlying entity. Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). Therefore, the claims against Deputy Schneider in his official capacity should be treated as claims against Christian County. A county is also covered by the doctrine of sovereign immunity. See Jones v. Cross, 260 S.W.3d. 343, 345 (Ky. 2008) (citation omitted). Christian County cannot be held liable unless there is a direct causal link between a county policy or custom and the alleged constitutional deprivation. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). The Plaintiff has failed to show a policy or custom that would prove the liability of Christian County and Deputy Schneider in his official capacity. Therefore, the claims against Christian County and Deputy Schneider in his official capacity should be dismissed.

### B. THE DEFENDANTS DID NOT VIOLATE THE PLAINTIFF'S CONSTITUTIONAL RIGHTS

The Plaintiff claims that Christian County and Deputy Schneider violated her constitutional right against unlawful seizure under the Fourth Amendment and her due process rights under the Fourteenth Amendment.

With regard to Ms. Jones' unlawful arrest claim, "[A]n arresting agent is entitled to qualified immunity if he or she could reasonably (even if erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent." Kennedy v. City of Villa Hills, Ky., 653 F.3d 210, 214 (6th Cir. 2011) (citations omitted). "[S]tate law defines the offense for which an officer may arrest a person, while federal law dictates whether probable cause existed for an arrest." Id. Based on the Kentucky statutes setting forth the crimes for which Ms. Jones was charged, it is clear that Deputy Schneider had probable cause to arrest Ms. Jones. Because the law at the time of this incident allowed a peace officer to arrest an individual without a warrant for a misdemeanor committed in his or her presence, Deputy Schneider had probable cause to arrest Ms. Jones. See KRS 431.005(1)(d).

Deputy Schneider had probable cause to arrest Ms. Jones for, at a minimum, Menacing. According to KRS 508.050(1), "A person is guilty of menacing when he intentionally places another person in reasonable apprehension of imminent physical injury." Deputy Schneider was clearly placed in reasonable apprehension of imminent physical injury because he thought Ms. Jones was going to harm him. His fear was validated because Ms. Jones continued to scream and approach Deputy Schneider as he was trying to restrain Austin. Therefore, Deputy Schneider had probable cause to arrest Ms. Jones for, at a minimum, Menacing.

Ms. Jones' arrest for Obstruction of Governmental Operations was also based on probable cause. According to KRS 519.020(1), "A person is guilty of obstructing governmental operations when he intentionally obstructs, impairs or hinders the

11

performance of a governmental function by using or threatening to use violence, force or physical interference." Because Ms. Jones was yelling and refusing to comply with Deputy Schneider's orders to step back, she placed Deputy Schneider in fear that she would harm him. Her threatening demeanor obstructed, impaired, and hindered Deputy Schneider's ability to restrain the juvenile. Therefore, Deputy Schneider had probable cause to arrest Ms. Jones for Obstructing Governmental Operations in addition to Menacing.

Deputy Schneider also had probable cause to arrest Ms. Jones for Resisting Arrest. KRS 35.580 sets forth, "Any person subject to this code who resists apprehension … shall be punished …." Deputy Schneider instructed Captain Cooksey and Sergeant Wallace to arrest Ms. Jones because she had gotten back up off the ground and turned to go back into the residence. From the standpoint of the officers in that instance, Ms. Jones was attempting to resist apprehension. Therefore, Deputy Schneider had probable cause to arrest Ms. Jones for Resisting Arrest, in addition to Menacing and Obstruction of Governmental Operations.

If it is shown that probable cause existed to make the arrest and proceed with prosecution, claims for false arrest under the Fourth Amendment must fail. See Braley v. City of Pontiac, 906 F.2d 220 (6th Cir. 1994). The burden is on the Plaintiff to show that there was no probable cause for her arrest as an element of her case in chief. Raine v. Drasin, 621 S.W.2d 895, 899 (Ky. 1981). Ms. Jones has failed to meet that burden in her pleadings. Further reinforcing the Officer's basis for probable cause is that the Christian County District Judge who presided over the two trials in Commonwealth v. Trina Jones, 08-M-02078, declined to direct a verdict in favor of Ms. Jones. Instead, the Judge found

12

that a reasonable juror could find Ms. Jones guilty beyond a reasonable doubt. Deputy Schneider had probable cause to arrest Ms. Jones, thus, there was no violation of her Fourth Amendment rights. Furthermore, an officer who makes a lawful arrest does not interfere with an individual's due process rights.

## IV.  CONCLUSION

For the reasons set forth in this Memorandum of Law, the Defendants respectfully request Summary Judgment.

Respectfully submitted,

s/Harold M. Johns
Harold M. Johns
Attorney for Defendants
12 Public Square
P.O. Box 746
Elkton, Kentucky 42220
Telephone: 270-265-2912
Facsimile: 270-265-2054
hmjohns@johnslawfirm.com

J. Michael Foster
Christian County Attorney
P.O. Box 24
Hopkinsville, Kentucky 42240
Telephone:  270-887-4114
Facsimile:  270-886-3910
mfoster@hopkinsville.net

## CERTIFICATE OF SERVICE

On the 30th day of September, 2011, the undersigned filed this document through the ECF system, which will send a notice of electronic filing to:

Hon. Mark Nolan
Hon. Stephanie D. Ritchie
Attorneys for Plaintiff
Batson, Nolan, Pearson, Miller & Joiner
121 South Third Street
Clarksville, Tennessee 37040

s/Harold M. Johns
Harold M. Johns
