# Expert Witness Report
# Trina Williams Jones v Christian County Kentucky, et al.
## U.S. District Court, Western District of Kentucky
## Paducah Division
## Civil Action No. 5:09-CV-00198

## Prepared By: Assistant Chief Michael D. Bosse
## Date of Report: November 12, 2011

I was contacted by the law office of Harold M. Johns for the purpose of reviewing the events, circumstances and actions related to the contact between Deputy Robert Schneider of the Christian County Sheriff's Department and Trina William Jones on November 21, 2008. I was requested to provide my opinions regarding that contact. I reviewed the following material to reach those opinions:

Deposition of Trina Jones
Deposition of Lewis Livingston Leavell
Affidavit of Robert Schneider
Uniform Citation K619642, Trina Jones
Uniform Citation K619642, Austin Jones
Uniform Citation K523453, Austin Jones
Uniform Citation K 523454, Austin Jones
Evidence / Recovered Property Form, 0800030912/K619642
Supervisory TASER Use Report
Uniform Citation K619641, Austin Jones
CourtNet Report SCH NO: 001323097274
Expert Witness Report Dr. Richard Weinblatt

**Based on my review of the above listed material I made the following observations:**

On November 21, 2008 at approximately 7:00 in the evening, members of the Christian County Sheriff's Department were dispatched to a disturbance call at 4170 Greenville Road Hopkinsville, Kentucky. This is the residence of Trina and Austin Jones.

Earlier that afternoon Trina Jones had discovered her son, Austin Jones was intoxicated on what she believed to be alcohol. Austin Jones was fifteen years old in November of 2008. Ms. Jones attempted to take Austin home and put him to bed, however Austin refused to comply. At some point while at home with his mother, Austin Jones telephoned the Christian County Dispatch Center using the 911 emergency line. After reaching the Dispatch Center Austin apparently hung the phone up prompting a call back

1

from the Dispatch Center. Trina Jones answered the call back and apparently communicated that law enforcement was not needed.

The exchange between Austin Jones, Trina Jones and the Christian County Dispatch Center prompted the dispatch call to 4170 Greenville Road which was the residence of Trina and Austin Jones.

While there are multiple issues in dispute between the parties once the deputies arrive, all parties appear to agree that Deputy Robert Schneider, Captain Timothy Cooksey, Bailiff Tracey Cooksey and Sergeant Timothy Wallace all arrived at the Jones residence.

All parties appear to agree that Deputy Schneider had contact with Austin Jones and Trina Jones prior to, or during the arrest of both. All parties generally agree that Deputy Schneider used a TASER to control Austin Jones and that Deputy Schneider pushed Trina Jones resulting in her falling to the ground. Ms. Jones' position is that she sustained injury from that action.

**NOTE:** Because there are significant differences in the description of events by the parties involved, I must qualify my opinions on the particular set of circumstances used to reach that opinion. It is not this expert's intent to determine which party is telling the truth or which perception of events was most accurate, but only to express opinions using my education, training and experience in the field of law enforcement in reviewing a given set of circumstances.

**Based on my review of the material provided I have formed the following opinions:**

1. **It was consistent with recognized police practices for the Christian County Dispatch Center to dispatch deputies to investigate what was occurring at 4170 Greenville Road, Hopkinsville Kentucky. Given Ms. Trina Jones' description of the phone calls to and from the Dispatch Center it was appropriate for deputies to go to and remain at 4170 Greenville Road for a period of time necessary to conduct an investigation.**

Based on the description provided by Ms. Trina Jones in her deposition, the call made by Austin Jones to 911 and the subsequent return call by the Christian County Dispatch Center would generally prompt a law enforcement response. It was consistent with recognized law enforcement standards for deputies to respond to the Jones' residence to investigate what was occurring. This would necessitate the deputies being on the property and making contact with the occupants of the residence. It was appropriate and consistent with the training law enforcement officers receive in the Commonwealth of Kentucky for the deputies to knock on the door of the residence as described by Ms. Jones. It was necessary for the deputies to attempt to make contact with persons inside.

While there is some dispute as to the extent to which Austin Jones was "out of control" (Uniform Citation), people do not generally call 911 as described by Ms. Jones when they are in control of themselves. Ms. Jones also described Austin Jones as thoroughly intoxicated and inebriated (Trina Jones Deposition). This description of her son would generally suggest a degree of lack of control by Austin Jones. Ms. Jones also described her inability to get Austin to follow her directives, for instance getting him to go to bed, stay in his bedroom or not answer the door. As described by Ms. Jones, these conditions all existed prior to any contact with the deputies.

2. **Based on Deputy Schneider's description from his Uniform Citation and subsequent affidavit, coupled with facts that are generally agreed upon by all parties, Deputy Schneider's use of the TASER to control Austin Jones was an objectively reasonable use of force. It is necessary to use Deputy Schneider's perception, coupled with other agreed upon facts to determine the appropriateness of the use of force. It is under the circumstances as Deputy Schneider perceived them and in the environment in which he perceived them that I must evaluate his decision to use force and whether that force was reasonable.**

All involved parties appear to agree that Austin Jones was intoxicated. Although Ms. Jones believed her son was intoxicated on alcohol, it would take a more thorough examination of Austin Jones to determine whether his intoxication was the result of alcohol, some other drug or the combination of both. Based on Ms. Jones description, Austin was significantly intoxicated (thoroughly intoxicated, inebriated). All parties appear to agree that Austin Jones left the Jones residence clad only in his underwear. Ms. Jones described Austin leaving the residence against her very directive not to do so (Trina Jones Deposition). Ms. Jones described the temperature outside as 18 degrees (Trina Jones Deposition). Ms. Jones description of Austin leaving the residence would appear to place Austin travelling in the direction of Deputy Schneider who was outside on the sidewalk.

Deputy Schneider described Austin Jones as exiting the residence dressed only in his underwear and running toward him screaming and cursing to "get off his property" (Robert Schneider affidavit). Deputy Schneider described Austin's demeanor as "very irate". Deputy Schneider further described giving commands for Austin to "stop and get on the ground" and a second command to "stop or I would tase him." Deputy Schneider described backing up away from Austin's advance.

Based on the combination of the following circumstances and the limited time in which Deputy Schneider had to make a decision, the use of the TASER was objectively reasonable:

The nature of the call,
Austin Jones level of intoxication,
The fact that he left the residence clad only in his underwear,

3

The description of the weather outside, (18 degrees)
The speed at which Austin was advancing on Deputy Schneider,
Austin's demeanor as perceived by Deputy Schneider, (screaming, cursing, irate)
Austin's refusal to stop,
Austin's refusal to heed the warning that he would be tased,
Austin's opportunity to stop even as the deputy backed away from him,
The fact that a second individual (Ms. Jones) was behind Austin Jones advancing in the same direction toward Deputy Schneider.

Based on the description of events, the time in which Deputy Schneider had to react could only be measured in seconds. Deputy Schneider was faced with a split second decision in an environment that was tense, uncertain and rapidly evolving and in which he had very little, if any, preliminary information concerning the parties involved. Deputy Schneider could not have <u>known</u> Austin Jones motivation or intent in this very short period of time, but based on his training would be expected to recognize his behavior as a very real threat to his safety. It was not necessary, nor is it a matter of police training that an officer must wait to be assaulted before using force under circumstances as described here.

While de-escalation is preferred over the use of force, time must exist for this process to occur. Police officers are not trained to de-escalate at the sacrifice to their own safety. Austin Jones' presentation of running from the house clad only in his underwear, into freezing temperatures, screaming and cursing as he advanced rapidly on a uniformed officer in a threatening manner would be consistent with an individual who is high on a drug. Officers are trained that individuals in this state can posses uncanny strength and be impervious to pain compliance techniques which adds to the applicability of the TASER over other forms of force. Under this set of circumstances, a deputy's first reaction, based on his training would be to stop Austin Jones' aggressive advancement and establish some level of control. This is true for his safety as well as the safety of all those who were present.

While it is rare, but again consistent with someone who is high on a drug, a second application of the TASER is sometimes necessary if the first attempt does not cause the individual to submit. In this case Deputy Schneider utilized the TASER for a second cycle when Austin attempted to get back up after the first use of the TASER. Neither the first nor the second use of the TASER was an excessive use of force given the circumstances encountered by Deputy Schneider.

It was not necessary for Austin Jones or Trina Jones to possess a weapon in order to pose a threat to Deputy Schneider's safety. The first contact Deputy Schneider had with anyone at the residence is a person clad in underwear charging him while cursing to get off his property.

3. **Based on Deputy Schneider' description of Trina Jones' continued advance after being ordered to stay back and her proximity to Deputy Schneider's**

4

> back after being ordered to get back, it was consistent with the options
> available to Deputy Schneider to push Trina Jones in an effort to get her
> away from him and Austin so he could control Austin with the application of
> handcuffs. Deputy Schneider's description of giving numerous commands for
> Ms. Jones to get back was consistent his training.

At the point that Trina Jones advanced and remained in close proximity to Deputy Schneider's back, the deputy was still attempting to control Austin Jones by applying handcuffs. Deputy Schneider was in a vulnerable position kneeling down with his back to Ms. Jones and still dealing with the threat posed by Austin's behavior.

Deputy Schneider did not posses any information absent the dispatch call concerning Ms. Jones and what events had occurred prior to his arrival. He could not have known Ms. Jones' intentions or whether she was armed.

At this point Deputy Schneider had the responsibility to detain both Austin Jones and Trina Jones for at least investigatory purposes. Police officers are trained that the Fourth Amendment has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to affect it. Deputy Schneider's description of using one open hand to push Trina Jones from his back was a very low level of force used only to get her away from him and Austin, in order to complete his attempt to control Austin. Based on Deputy Schneider's description, it was only after numerous commands for her to get back were ignored that he pushed her back.

Trina Jones' actions did not occur in a vacuum where nothing else was happening. In evaluating Deputy Schneider's decision to push Ms. Jones back, I considered the unique set of circumstances involved at the very moment he was still trying to control Austin Jones with handcuffs and the very short time frame in which the deputy had to react to Ms. Jones behavior in stating that the push (as described by Deputy Schneider) was objectively reasonable. There was no information provided for my review that suggested Deputy Schneider intended to push Trina Jones with such force as to knock her to the ground. Deputy Schneider specifically stated in his affidavit that his intent was to get her away from him. In addition, the deputy had no way of knowing whether Austin Jones, at least in his current state, did not pose a threat to Trina Jones as well.

The arrest of Ms. Jones was based on Deputy Schneider's belief that probable cause existed that Ms. Jones' actions created a reasonable apprehension of imminent physical injury to him. At the moment in time that Austin Jones was still unsecured and the deputy was still trying to secure him in handcuffs, Ms. Jones placed Deputy Schneider in reasonable apprehension of imminent physical injury.

In considering Trina Jones' account of Deputy Schneider's push, if the deputy stood up, moved five feet away from Austin and lunged toward her leaving Austin Jones on the ground unsecured and pushing her in the manner she described, then the use of force would, in my opinion have been excessive. While Ms. Jones description of being five

feet away may still have posed a potential threat to the officer, it is the combination of Austin Jones still being unsecured and the circumstance that he still posed a real threat (to the officer and perhaps even Ms. Jones) coupled with Ms. Jones close proximity that justified the one handed push (described by Deputy Schneider) to get Ms. Jones away from what was occurring. If the deputy intentionally left Austin Jones unsecured on the ground while he moved five feet away toward Ms. Jones, then it is not reasonable for the deputy to have believed Austin Jones still posed a threat.

**4. The encounter between Deputy Schneider and Trina and Austin Jones was not documented in a manner consistent with what is generally considered a high law enforcement standard.**

While the completion of the Use of TASER Form could be considered documentation of use of force and therefore comply with Christian County Sheriff Office policy it did not contain sufficient information to allow for an appropriate review.

It is generally considered a requirement in law enforcement for a thorough review that any injury to a person taken into custody be documented and photographed. Based on the information I reviewed, this did not occur in this case.

The failure of the video equipment to record the incident is not uncommon and does not enter into my evaluation of insufficient documentation.

The failure to sufficiently document the incident does not in and of itself indicate that the incident was not sufficiently reviewed and or investigated by the Christian County Sheriff Department.

My opinions are based on the information provided and a reasonable degree of law enforcement certainty. I reserve the right to alter these opinions based on additional and or new information.

**End of Report**
**November 12, 2011**

Michael D. Bosse