**Dr. Richard Weinblatt**
The Cop Doc LLC
309 Hunters Point Court
Longwood, FL 32779-2201
(407) 739-9089
richard@thecopdoc.com
www.TheCopDoc.com

**EXPERT'S REPORT (SUPPLEMENTAL)**

November 10, 2011

Stephanie D. Ritchie, Esq.
Batson Nolan PLC
121 South Third Street
Clarksville, TN  37040         RE:         Trina Williams Jones vs.
                                           Christian County, KY/Robert
                                           Schneider
                                           In
                                           United States District Court
                                           Western District of Kentucky
                                           Paducah Division
                               Case No.:   5:09-CV-00198

Dear Ms. Ritchie:

Pursuant to your office's request that I review, research, analyze, and report on the September 29, 2011 deposition you provided for Christian County, KY, Sheriff Livy Leavell, Jr., I am presenting to you this supplemental report.

A previous report dated September 30, 2011 had been submitted to you. The report included a list of reviewed materials. Pursuant to applicable rules, my fee agreement, resume, and list of cases consulted had also been provided. As before, this report is based on my training, education, and experience as a law enforcement officer, police chief, police academy instructor and director, criminal justice professor, writer, speaker, trainer, and educator.

This case had its genesis with events that transpired on or about November 21, 2008 involving Trina Jones and her now 17-year-old/then 15-year-old son, Austin Dale Jones, and then Christian County, KY, Sheriff's Office Deputy Sheriff Robert A. Schneider. A review of the events is included in my original report.

Dr. Richard Weinblatt – Supplemental Report of November 10, 2011 on Trina Jones Case

In addition to the materials mentioned in my original report of September 30, 2011, I have examined the following documents that you provided in order to facilitate the preparation of this supplemental report:

1. September 29, 2001 Deposition of Sheriff Livy Leavell Jr.

I also referred to the following cases and documents while preparing this report:

2. "Reviewing Use of Force: A Systematic Approach" Sam W. Lathrop Oct. 2000 FBI Law Enforcement Bulletin
3. "Put it in Writing: The Police Policy Manual" Michael Carpenter Oct. 2000 FBI Law Enforcement Bulletin
4. "Tips to Avoid Force and Sex-based Complaints" PoliceLink.com October 13, 2010 Dr. Richard Weinblatt
5. "You're in Trouble: Now What?" PoliceLink.com June 11, 2010 Dr. Richard Weinblatt
6. "Ten Ways to Generate Complaints on Patrol" PoliceLink.com May 28, 2010 Dr. Richard Weinblatt
7. "Ten Ways to Minimize Complaints" PoliceOne.com November 10, 2005 Dr. Richard Weinblatt
8. "Best Practices Guide: Developing a Police Department Policy-Procedure Manual" International Association of Chiefs of Police Smaller Police Departments Technical Assistance Programs
9. "Investigation of Employee Misconduct" International Association of Chiefs of Police National Law Enforcement Policy Center
10. "Use of Force" International Association of Chiefs of Police National Law Enforcement Policy Center
11. "Reporting Use of Force" International Association of Chiefs of Police National Law Enforcement Policy Center
12. "Model Policy: Investigation of Employee Misconduct" International Association of Chiefs of Police National Law Enforcement Policy Center
13. "Model Policy: Use of Force" International Association of Chiefs of Police National Law Enforcement Policy Center
14. "Model Policy: Reporting Use of Force" International Association of Chiefs of Police National Law Enforcement Policy Center
15. San Diego Police Background Investigations Recruitment website
16. Graham v Connor, 490 U.S. 386 (1989)
17. City of Canton v Geraldine Harris (1989)

## Expert's Opinions

1) **It was not consistent with commonly accepted police standards and practices to have policies in place for an extended time frame without reviewing them on a regular basis and effecting changes.**

Christian County Sheriff Livy Leavell, Jr. stated in his deposition (on pages 7 and 8) that the department policy and procedure manual had been in place during his entire tenure as sheriff of five years (deposition p. 4, lines 7 and 8) and that he had adopted it from a "prior sheriff." Having a static policy that appears to be barely looked at in any kind of systematic review, is contrary to what a law enforcement chief executive should do. These are times that are challenging for law enforcement and reflect constantly evolving best practices and case law. I was surprised to read that Sheriff Leavell had only reviewed the policies prior to the deposition appointment and had only done so for "about ten minutes." (deposition page 4, lines 14 and 15). This seems to evidence his lack of emphasis on the importance of policies and procedures within a law enforcement agency.

Policy manuals are very important vehicles for communicating the departmental leadership's boundaries for acceptable employee conduct. As mentioned by Michael Carpenter, M.A., M.A.T., in his FBI Law Enforcement Bulletin article "Put It in Writing: The Police Policy Manual," "By successfully communicating expectations to each member of the department, chief executive officers take an important step in establishing accountability, responsibility, and discipline." (p. 2)

This point is underscored by the International Association of Chiefs of Police (IACP) and applies to all agencies regardless of size. The International Association of Chiefs of Police is the premier law enforcement executive organization in the world with 20,000 members in over 100 different countries.

In the IACP's Smaller Police Departments Technical Assistance Program Best Practices Guide "Developing a Police Department Policy-Procedure Manual, by Chief W. Dwayne Orrick, the document is described "as the foundation for all of the department's operations" and "When properly developed and implemented, a policy-procedure manual provides staff with the information to act decisively, consistently, and legally." (p. 1).

As for the apparent static status of Sheriff Leavell's policies, the IACP echoes my concern that reviews and appropriate changes should occur on a systematic and consistent basis. On page 2 of Chief Orrick's document, several guiding principles regarding policy development and implementation are discussed. One of those is item number six which describes the policy manual as "a living document." It goes on further to state: "Routine inspections and reviews should be completed to ensure compliance with its directives so that the manual remains current." (p. 2).

On page 8 of the IACP paper, my concern with the lack of systematic review by the Sheriff is reflected. "Finally, the entire manual should be reviewed on at least an annual basis." (p. 8). The FBI publication also calls for "Chief executive officers should develop a system that allows for the annual review of every agency directive." (Carpenter, p. 5).

2) **It was not consistent with commonly accepted police standards and practices to not have formal instruction sessions for employee law enforcement officials on the relevant contents of a policy manual and have signed documentation of receipt.**

All police officers and deputy sheriffs upon being employed by a law enforcement agency should be presented with a current version of the agency's policy and procedures manual. Formal, documented instruction in the contents of the manual should take place. Additionally, officers and deputies should sign formal paperwork that states that they have received copies of the policies, have been instructed in same, and have had an opportunity to read and ask questions or seek clarification. Some agencies go so far as to even test officers on the policy contents and keep the test results as part of their file. Lastly, such a signed document should signify that they agree to abide by the policies. To date, I have not seen any paperwork indicating that such training or document signing occurred with Deputy Robert Schneider.

As detailed by Chief Orrick in his IACP paper: "When the (policy manual) training is complete, documentation should be maintained that the officers have been issued their copy manuals, trained on the content and understand its requirements." (p. 7).

As reflected by Sheriff Leavell, no such documentation exists (deposition page 31, lines 16, 17, and 18). The Sheriff admitted that he does not have any signed documentation on the manual acknowledgment and conceded "…that'd probably be a good idea that they do that." (deposition p. 32, lines 21 and 22).

3) **It is not consistent with commonly accepted police standards and practices to not thoroughly investigate and document an applicant for a law enforcement position.**

In my review of the documentation provided to me for my original report, I did not see evidence of satisfactory background investigation and documentation procedures with regards to Deputy Robert Schneider. In his September 29, 2011 deposition, Sheriff Leavell confirms that deplorable situation on pages 20, 21, 22, 23, and 24.

Contrary to commonly accepted police practices, no recollection or documentation was offered concerning medical exams, psychological examination, credit report, nor did there appear to be checks with his prior police chief employer or wife. An investigatory inquiry into all these informational resources is routine in law enforcement background investigations. As stated on the San Diego Police Department's website: "The background investigator will contact prior employers, relatives, and references. The investigator will check into your employment history, credit status, driving record, and other pertinent information." (http://www.sandiego.gov/police/recruiting/join/recbackground.shtml).

I was shocked to read on page 22 that he stated that he hadn't read the file (line 24). Further disturbing, was the Sheriff's statement that he didn't necessarily think it would be important to look at the file (lines 4, 5, and 6).

4) **It is not consistent with commonly accepted police standards and practices to not thoroughly investigate suspected employee misconduct even in the absence of a complaint.**

Dr. Richard Weinblatt – Supplemental Report of November 10, 2011 on Trina Jones Case

I was troubled to read in Sheriff Leavell's deposition that he did only a cursory review of Deputy Robert Schneider's situation with the Byrums. In the interest of full disclosure, I am familiar with that case having consulted for it.

On page 36 and 37 of his deposition, Sheriff Leavell related how he sat down with Deputy Schneider and went over the case. It did not appear that the criminal case ruling, as well as the civil case situation, gave him much concern. The Sheriff also stated that the Byrums did not come in to file a complaint.

As the chief executive of a law enforcement agency, the Sheriff has an obligation to have the case thoroughly investigated. As stated in the IACP's National Law Enforcement Policy Center's "Investigation of Employee Misconduct" concepts and issues paper, a "department's mechanism for investigating allegations of officer misconduct is of great importance." (p. 4) This approach is also echoed in the IACP's Model Policy on Investigation of Employee Misconduct.

Contrary to what the Sheriff described in his deposition on page 37, lines 8, 9, 10, and 11, as well as on page 42, lines 19 and 20, he does not need to have a complaint from the Byrums for him to initiate a full blown misconduct investigation. On page 6 of the aforementioned IACP employee misconduct paper, it is clear that "complaints may come from within the department, as well as external sources"

As stated in the FBI Law Enforcement Bulletin's "Reviewing Use of Force: A Systematic Approach" article, "The requests for use of force review may come from different venues. A citizen complaint, an administrative inquiry, or a training method represent some of the vehicles that may transport a request for use of force review." (page 16).

I was appalled to read on page 53 of the deposition that no complaint connoted to the Sheriff that they were under no imperative to investigate further. He even appeared to have abdicated his responsibility to the courts: "…we're not going to investigate every single deputy every time they make an arrest to see whether or not it was lawful or not." and "That's what the court system's for." (page 53, lines 3, 4, 5, and 6). While it is true that the court system does address these kinds of issues, I would respectfully disagree with the Sheriff and contend that is what he and his supervisory and command staff are also there for.

Yet again, on page 68, line16, 17, 18, and 19, the Sheriff appears to take the one sided word of his employees (Schneider, Cooksey, and Wallace) without doing a thorough investigation, including reading the Trina Jones deposition (Sheriff Leavell deposition page 68, line 13, 14, and 15), in a commonly accepted manner. Per Captain Sam W. Lathrop's "Reviewing Use of Force: A Systemic Approach" FBI article: "To obtain a complete picture, evaluators must examine a use of force incident in its entirety." (page 19).

The Sheriff or his command staff had enough to initiate an investigation on their own without the Byrums coming to the station and filling out a departmental complaint form. Doing an informal one-sided interview with the involved officer and having a blanket acceptance for his or her version of the events is not considered a professionally acceptable employee misconduct investigation.

Dr. Richard Weinblatt – Supplemental Report of November 10, 2011 on Trina Jones Case

At the very least, the Byrums should have been contacted and be afforded the opportunity to lodge a formal complaint with the agency and be interviewed accordingly. That did not appear to have happened.

As a result of this reckless disregard for their supervisory duties at the Sheriff's Office, by the Sheriff and his employees, the public continues to be put at risk.

5) **It was not consistent with commonly accepted police standards and practices to retain an employee that does not demonstrate the temperament, demeanor, or maturity to perform as a professional law enforcement officer**

As I stated in my original report, most troubling of all is the employment of, retention of, and circumstances surrounding Deputy Robert Schneider by the Christian County Sheriff's Office. The Sheriff in his deposition (page 38) attempts to paint Deputy Schneider as a man that was liked by all, was of even temperament, and had no employee issues. That is contrary to the documents that I reviewed from the materials.

As written in my original report, I have reproduced (again) the February 3, 2011 letter on Christian County Sheriff's Office letterhead from his file that was written by a high ranking member of the Sheriff's staff which clearly shows that the agency knew of issues with Deputy Schneider and failed to act. Sheriff Leavell even identifies the writer of the official document as Major Billy Gloyd, the chief deputy of the Christian County Sheriff's Office (deposition page 61, line 12).

> "Deputy Schneider has shown a consistent pattern of abuse, aggressiveness, and suicidal tendencies during his employment with the Christian County Sheriff's Department. He has, on several occasions, requested time off under the category of "stress leave", due to his self-admitted inability to respond rationally to confrontations, and therefore needed time off.
>
> Deputy Schneider currently has three pending lawsuits, all related to alleged excessive use of force. More recently, he has been served with an Emergency Protective Order taken out by his spouse, describing irrational behavior and threats to himself and others. The petitioner of this order describes this behavior as being recurrent over the past few years. During these alleged confrontations, Deputy Schneider has admittedly threatened to harm himself by putting his department issued service weapon to his head more than once, and going so far as writing instructions to his family on what to do with him in the event of his death." (page 000323)

It seems inconceivable that all of the temperament and stability issues in the Major Billy Gloyd Sheriff's Office official letterhead document were not well-known. There is a compelling picture of the negligent hiring and retention of Robert Schneider.

On page 55 of the Sheriff's deposition, Sheriff Leavell admitted that no regular performance evaluations were done on employees. That is contrary to normal managerial practices, let alone those used within a law enforcement organizational context.

Even the United States Supreme Court, in City of Canton v Geraldine Harris (1989), ruled clearly that law enforcement agencies have an obligation to properly supervise and train their employees. The absence of regular performance evaluations is yet another indicator of lax and improper supervision within this agency.

As noted in the IACP National Law Enforcement Policy Center's "Use of Force" concepts and issues paper, "…the most important component of regulating the use of force by police officers is first line supervision. Policies and procedures on use of force are of little value without the oversight of line supervisors in particular and command-level personnel in general to ensure officer compliance and conformity with such directives." (page 1).

Formal systems need to be in place for the systematic and regular review of uses of force incidents. According to the Sheriff, none appears to be in place at the Christian County Sheriff's Office.

### 6) It was not consistent with commonly accepted police standards and practices to not document the use of force by a law enforcement officer.

On page 48 of the Sheriff's deposition, it appears that the Sheriff sanctions violations of his own policy manual. On line 10, the Sheriff indicates that information within a citation is fine by him, but his written departmental policy clearly states (as discussed in the deposition on page 49) that "An officer shall submit a use of force report…" (page 49, line 14).

Writing a small amount of information on a citation, with brief reference to a use of force, is not in any way adequate under a complete reporting of the use of force. That the Sheriff and his subordinate supervisors would allow such a practice to continue in clear violation of the agency's own policy is troubling and reveals a culture not so concerned with following rules, regulations, and policies.

The IACP's Model Policy for Reporting Use of Force calls for "Each officer who uses force in an incident shall submit a separate written use of force report." (page 1). The Model Policy goes on even further and states: "Any officer who witnesses a use of force shall advise a supervisor and shall submit a use of force report." The policy also calls for supervisory and command staff review and document conclusions on the separate written use of force reports. According to the materials I reviewed, those actions did not happen.

In the IACP's National Law Enforcement Policy Center's "Use of Force" concepts and issues paper, my opinion mandating the thorough reporting of the use of force is mirrored. Under "G. Reporting Use of Force," the document states: "Accurate and timely reporting on use of force incidents is a crucial part of the process of monitoring and controlling such responses." (page 6).

In my "Tips to Avoid Force and Sex-based Complaints" article on PoliceLink.com, I wrote under the heading "Document. Document. Document.": "Any situation that involves force, an exercise of your legal authority as a law enforcer, or other questionable incident should be written down in detail. That information may be crucial in your defense perhaps years later when your recollection of the events is faded." Another article of mine on PoliceLink.com, "Ten Ways to Generate Complaints on Patrol," also points to a lack of complete documentation as a sure fire way to create or not correct a problem.

In addition to the written reports, it appears from the deposition that the Sheriff discounts the importance of the use of video dash cams in his agency's marked patrol units. Interestingly, all of the units on the scene did not appear to have video available of the Trina Jones incident in spite of the fact that Deputy Schneider had checked the box indicating video camera on the citation.

As I wrote in PoliceLink.com's "You're in Trouble: Now What?", "Police reports should contain a tremendous amount of relevant (key word – relevant) detail. Police reports that are vague and lack important detail are not helpful in the criminal prosecution and can be damaging to you during any civil tort action taken against you and or your agency  Other types of evidence, such as patrol car dash cams, can go a long way towards quickly resolving a complaint."

Per the Sheriff's deposition and prior reviewed documents, none of that appears to have taken place.

## Conclusion

After reviewing the September 29, 2011 deposition of Christian County Sheriff Livy Leavell, Jr., along with other materials as reflected in my original report dated September 30, 2011, it is my expert opinion, as a former police chief, ex-police academy director and instructor, and past criminal justice professor who has written, spoken, and taught extensively on law enforcement practices, that Deputy Robert Schneider was a problematic employee that was negligently hired and retained with improper supervision to the detriment of the Trina Jones, as well as the people of Christian County, KY.

In his deposition, Sheriff Livy Leavell, Jr. implicitly and explicitly condones routine violations of his own policy. He does not have any of the accepted managerial and organizational systems in place to ensure that his staff complies with the basic standard of care and conduct expected of law enforcement officials, and fails repeatedly to grasp the details, concepts, and issues that a law enforcement executive should have command of (especially given the legal circumstances of this matter).

I found his answers to deposition questions and explanations of his agencies protocols, procedures, and actions to be troubling and not in keeping with his position as a law enforcement professional and executive.

My professional opinion on this case is based on the information shared with me to this date. I reserve the right to provide additional analysis based on reports, documents, and other

information that may be provided to me at a later date. If I may be of any further service, please do not hesitate to let me know.

Sincerely,

*[signature]*

Dr. Richard Weinblatt
Principal Consultant
The Cop Doc LLC